**Jeffrey REED, Plaintiff–Appellant,**

v.

**CITY OF CHICAGO, a Municipal Corporation, John Griffin, Detective, W. Murphy, Detective, et al., Defendants–Appellees.**

No. 95–1606.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1995.

Decided March 12, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied May 2, 1996.

Edward T. Stein (argued), Jill A. Friedman, Mary Lou Boelcke, Chicago, IL, for plaintiff-appellant.

Lawrence Rosenthal (argued), Donald R. Zoufal, John H. Ehrlich, Benna R. Solomon, Margaret A. Carey, Patricia J. Kendall, Anne K. Berleman, Susan S. Sher, Irene S. Caminer, James P. McCarthy, Office of Corp. Counsel, Appeals Div., Chicago, IL, for defendants-appellees.

Before BAUER and RIPPLE, Circuit Judges, and SKINNER, District Judge.*

BAUER, Circuit Judge.

Jeffrey Reed appeals the district court's dismissal of his 42 U.S.C. § 1983 action against the City of Chicago and various Chicago Police officers ("detectives"). Reed sued the City and the detectives for his allegedly unlawful confinement for approximately 23 months prior to his acquittal of first degree murder. His four count-complaint proposed a variety of legal theories supporting liability. The district court rejected all of them and dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). We affirm.

**I**

Although the legal issues in this case are somewhat confusing, the facts as alleged in Reed's complaint are not. In early June 1991, defendants Griffin, Murphy, Kroll, Christophersen, Stehlik, Turner, and Green began investigating a recent killing. On June 12, 1991, the detectives went to the home of the prime suspect, Garvin Bryant. Bryant denied his own guilt but fingered Reed as the killer. Another person at Bryant's home corroborated this information. Without further investigation, and without an arrest or search warrant, detectives Turner, Kroll, and Murphy went to Reed's home and placed him under arrest for first degree murder. Shortly thereafter, a grand jury indicted Reed for murder based solely on the detectives' testimony and statements. Unable to post bond, Reed remained incarcerated for approximately 23 months while the case was pending. During that time, Reed filed a motion to quash the indictment. Detectives Turner, Kroll, and Murphy testified at the hearing on the motion to quash. The trial court denied the motion, finding that the detectives had probable cause to arrest Reed based on the statements they received at Bryant's home. On May 5, 1993, the court acquitted Reed in a bench trial.

As discussed below, this case would be much simpler if Reed had filed a timely (by June 12, 1993) wrongful arrest lawsuit against the detectives. Instead, Reed filed his four-count complaint in federal court on May 4, 1994.[1] Count I alleged a Fourth Amendment violation in that the detectives deprived Reed of his right to be free from unlawful arrest, unreasonable search and seizure, wrongful confinement and detention, and malicious prosecution. Count II, also against the detectives, charged that Reed's post-arrest confinement was oppressive and "shocking to the conscience" in violation of the Fourteenth Amendment. Count III alleged a pendent state law malicious prosecution claim against the City and the detectives. Count IV alleged that the City and the detectives had negligently violated a special duty owed to Reed.

All defendants moved to dismiss Reed's complaint pursuant to Fed.R.Civ.P. 12(b)(6). The district court granted the motion in all respects. It found that Reed's unlawful ar-

---

* The Honorable Walter Jay Skinner, Judge of the United States District Court for the District of Massachusetts, sitting by designation.

1. Reed filed an amended complaint on August 10, 1994.

rest, search and seizure claims were barred by the two year statute of limitations. More significantly for this appeal, the district court found that neither the Fourth nor the Fourteenth Amendment supported Reed's malicious prosecution and unlawful confinement claims. Finally, the district court declined supplemental jurisdiction over the state law malicious prosecution claim.

Although Reed proffered a number of legal theories supporting liability in the district court, his appeal addresses only his malicious prosecution and unlawful confinement claims against the detectives. The unlawful confinement claim is essentially identical to his malicious prosecution claim, and, as discussed below, fails for the same reason. For simplicity's sake, we will address them together under the label of malicious prosecution.

## II

 We review de novo the dismissal of Reed's complaint. *Starnes v. Capital Cities Media, Inc.,* 39 F.3d 1394, 1396 (7th Cir. 1994). We assume all well-pleaded allegations to be true and we draw all inferences in Reed's favor. *Id.* However, we "are not compelled to accept ... conclusory allegations concerning the legal effect of facts set out in the complaint." *Baxter by Baxter v. Vigo County School Corp.,* 26 F.3d 728, 730 (7th Cir.1994). In reviewing the district court's dismissal of a complaint, we may affirm on any ground contained in the record. *Cushing v. City of Chicago,* 3 F.3d 1156, 1167 (7th Cir.1993).

 To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law. *Starnes,* 39 F.3d at 1396. The latter criterion is not at issue in this case. To state a claim for malicious prosecution under section 1983, a plaintiff must demonstrate that: (1) he has satisfied the requirements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty. *Smart v. Board of Trustees of University of Illinois,* 34 F.3d 432, 434 (7th Cir.1994), *cert.*

*denied,* —— U.S. ——, 115 S.Ct. 941, 130 L.Ed.2d 885 (1995). To state a claim for malicious prosecution under Illinois law, a plaintiff must allege that: (1) he was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in the plaintiff's favor; and (5) there was an injury. *Curtis v. Bembenek,* 48 F.3d 281, 286 (7th Cir.1995) (citations omitted).

## III

At bottom Reed's complaint is that he was arrested and detained for 23 months without probable cause. However, his case was complicated from the start because he failed to file his claim for wrongful arrest or detention within two years of his arrest, and thus that claim was timebarred. *Gosnell v. City of Troy, Ill.,* 59 F.3d 654, 656 (7th Cir.1995); 735 ILCS 5/13–202. Therefore, the central question here comes down to whether Reed should be permitted to shoehorn a wrongful arrest claim into a malicious prosecution claim in order to avoid a successful statute of limitations defense.

We have had several occasions within the last few years to address claims for malicious prosecutions brought under 42 U.S.C. § 1983. See, e.g., *Smart,* 34 F.3d at 434; *Garcia v. City of Chicago, Ill.,* 24 F.3d 966, 971–72, n. 6 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1313, 131 L.Ed.2d 194 (1995). Unfortunately, the most important aspect of this discussion—what constitutional amendment is implicated by a malicious prosecution—remains somewhat unclear. This lack of clarity is attributable to *Albright v. Oliver,* —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Prior to *Albright,* the law in this circuit regarding which constitutional amendment applied to complaints against government treatment of criminal suspects was straightforward. We had held consistently that three different parts of the Bill of Rights applied in sequence during arrest and confinement. *Titran v. Ackman,* 893 F.2d 145, 147 (7th Cir.1990). First, force during an arrest must be reasonable within the meaning of the Fourth Amendment.

Next, between arrest and conviction, the government may not punish a suspect without due process of law under the Fifth Amendment. Finally, after conviction the government may not inflict cruel and unusual punishment in violation of the Eighth Amendment. *Titran*, 893 F.2d at 147 (citation omitted); *Wilkins v. May*, 872 F.2d 190, 193 (7th Cir.1989), *cert. denied*, 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990).

The reasoning behind the first and third steps of this analysis is unimportant for this case. We based our conclusion that the Fourth Amendment did not apply between arrest and conviction on the fact that the "seizure" of an arrestee ends after the *Gerstein* hearing.[2] *Wilkins*, 872 F.2d at 193. Nevertheless, because a malicious prosecution claim addresses the government's treatment of a suspect between arrest and acquittal or dismissal of charges, the Due Process Clause governed. Or so we thought.

However, in *Albright v. Oliver*, Chief Justice Rehnquist, writing for a plurality, held that the Due Process Clause does not support a claim for malicious prosecution. —— U.S. at ——, 114 S.Ct. at 814. Instead, the plurality held that the Fourth Amendment governs malicious prosecution claims. *Id.* at ——, 114 S.Ct. at 813. Because the plaintiff in *Albright* had raised only a due process claim, the court refused to express a view on whether *Albright's* malicious prosecution claim would succeed under the Fourth Amendment. *Id.*

After *Albright*, one might have thought that our tripartite analysis enunciated in *Wilkins* and *Titran* would not have survived. However, in *Garcia*, 24 F.3d at 971–72, n. 6, we reiterated our *Wilkins* analysis, adding that *Albright* cast "considerable doubt on the applicability of substantive due process" to post-*Gerstein* hearing conduct. The court's analysis was limited to a footnote. Judge Cudahy concurred and devoted more attention to *Albright*, acknowledging that *Albright*

"potentially blurs the bright line we have drawn." *Garcia*, 24 F.3d at 975. Judge Cudahy noted that following Justice Ginsburg's analysis in her concurring opinion in *Albright*, a malicious prosecution claim would lie under the Fourth Amendment because a defendant "remains seized for trial so long as he is bound to appear in court and answer the state's charges." *Garcia*, 24 F.3d at 975 (citation omitted).[3] Nevertheless, Judge Cudahy concluded that "[s]ince, however, the court's statements about the applicability of the Fourth Amendment are essentially only dicta in an otherwise narrow substantive due process case," he concurred with the majority's conclusion that the Fourth Amendment did not apply to *Garcia's* post-*Gerstein* hearing complaints. *Id.*

Approximately three months later, this court again addressed *Albright*. In *Smart*, 34 F.3d at 434, we stated that:

> If malicious prosecution or abuse of process is committed by state actors and results in the arrest or other seizure of the defendant, there is an infringement of liberty, but we now know that the defendant's only constitutional remedy is under the Fourth Amendment (as made applicable to the states by the Fourteenth), and not under the due process clause directly. *Albright v. Oliver*, —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

*Smart* did not cite *Garcia* and did not analyze further whether the "other seizure" could be the proverbial "continuing seizure." This would be problematic because malicious prosecution often will include post-*Gerstein* hearing conduct.

Here, the district court reconciled *Garcia* and *Smart* by finding that *Smart* and the Fourth Amendment were no help to Reed because his seizure ended after his probable cause hearing. The district court concluded that because "*Garcia* holds that substantive due process governs after a *Gerstein* hearing

---

2. *Gerstein v. Pugh*, 420 U.S. 103, 126, 95 S.Ct. 854, 869, 43 L.Ed.2d 54 (1975) held that "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention." Probable cause hearings held after arrests made without warrants are commonly referred to as "*Gerstein* hearings."

3. Although the concept of a "continuing seizure" is intriguing, see, e.g., *Albright*, —— U.S. at —— ——, 114 S.Ct. at 815–16 (Ginsburg, J., concurring), we rejected the concept in *Wilkins*. 872 F.2d at 194.

and [because] *Albright* holds that a claim of malicious prosecution cannot be based on substantive due process, this Court must dismiss Plaintiff's malicious prosecution claim." We acknowledge that the district court's reading of each of these cases in the abstract seems correct. However, reading them in context suggests that the district court's analysis is incorrect because it implies that *Garcia* held that there is no remedy for a post-*Gerstein* hearing malicious prosecution claim. However, this results in the same "gap in constitutional protection" that we sought to eliminate in *Wilkins* via the tripartite analysis.[4] 872 F.2d at 193.

We now have reached the edge of the same precipice upon which the Second Circuit recently found itself. And, as Judge Calabresi wrote for that court, "tempted as we are to clarify the law in this area in the wake of the many questions left unanswered by the Supreme Court in *Albright,* we nonetheless conclude that this is not the case in which to struggle with *Albright.*" *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1154 (2nd Cir.1995). Although the district court dismissed Reed's claim because he failed to maneuver around the *Albright* minefield, we conclude that Reed's complaint does not state a claim for malicious prosecution because what he labels malicious prosecution is nothing more than his time-barred wrongful arrest claim.

■ Let's examine carefully the factual allegations in Reed's complaint. In particular, what is it that Reed alleges the defendants did? First, that his arrest and charge of murder were "without probable cause." Next, "the basis for Plaintiff's subsequent continued incarceration [after the state court found probable cause at the *Gerstein* hearing] was without probable cause." Then, that "plaintiff was subsequently indicted for murder solely on the basis of the [detectives'] testimony and statements." Finally, certain of the detectives "testified at the hearing to quash the arrest."

So what do we have? At bottom, we have an allegation that the defendants lacked probable cause to arrest Reed and charge him with murder. That is a claim for wrongful arrest. As Reed concedes in his brief, this claim is timebarred. All that is left apart from that claim is the detectives' testimony before the grand jury and at the hearing on the motion to quash. Reed did not allege that the detectives gave perjured testimony at these hearings, merely that they "testified." In fact, Reed made no allegations in the complaint that the detectives falsified any information or evidence. He did not allege that they discovered exculpatory evidence but withheld it from him. In sum, there were no allegations that the detectives committed any improper acts after arresting Reed without probable cause. We fail to see how this is malicious prosecution.[5]

In her concurrence in *Albright,* Justice Ginsburg noted that a malicious prosecution action against police officers is "anomalous." —— U.S. at —— n. 5, 114 S.Ct. at 816 n. 5. As a general proposition, we agree. This is because the State's Attorney, not the police, prosecutes a criminal action. It is conceivable that a wrongful arrest could be the first step towards a malicious prosecution. However, the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor. *Senra v. Cunningham,* 9 F.3d 168, 173 (1st Cir.1993) citing *Dellums v. Powell,* 566 F.2d 167, 192–193 (D.C.Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). Here, Reed's counsel acknowledged at oral argument that he had not alleged any improper influence or knowing misstatements by the detectives. All that Reed's

---

4. This situation is not as unjust as Reed's counsel suggested at oral argument. After all, at one point, Reed had an entirely viable wrongful arrest claim against the detectives. The fact that this claim is now time-barred does not mean that Reed must be afforded another remedy.

5. The defendants, citing *Briscoe v. LaHue,* 460 U.S. 325, 326, 103 S.Ct. 1108, 1110–11, 75 L.Ed.2d 96 (1983), argue that their testimony before the grand jury and at pre-trial hearings is absolutely immune. This argument is not wholly without merit. See *Curtis v. Bembenek,* 48 F.3d 281, 283–85 (7th Cir.1995). However, in light of our holding that Reed's complaint fails to allege malicious prosecution adequately, we need not address the immunity issue. *Id.* at 285–86.

complaint alleges regarding the detectives' continuation of the proceedings was their testimony before the grand jury and at the hearing on a motion to quash. There is no allegation that the detectives covered up exculpatory evidence or testified untruthfully. These omissions are fatal to Reed's complaint.

### IV

For the foregoing reasons, we affirm the district court's dismissal of Reed's complaint.[6]

AFFIRMED.

---

6. Reed also has filed a motion to strike the Appellees' Supplemental Appendix because it contains documents that were not part of the district court record. The Appellees acknowledge that the appendix materials were not before the district court, but argue that we should take judicial notice of the materials in the appendix which are records from the state court proceedings involving Reed. However, given our scope of review in this appeal, the state court records are irrelevant so we grant Reed's motion to strike the supplemental appendix. *Sports Center, Inc. v. Brunswick Marine*, 63 F.3d 649, 650 n. 1 (7th Cir. 1995).