**Fred EWING, Plaintiff,**

v.

**Detective Jim O'BRIEN,
et al., Defendants.**

No. 98 C 5569.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 19, 1999.

---

**814**

Thomas M. Peters, Kevin R. Peters, Chicago, IL, for Plaintiff.

Michael Patrick Monahan, Eilleen Ellen Rosen, City of Chicago, Law Dept. Corporation Counsel, Robert W. Barber, Stacy Ann Benjamin, City of Chicago, Dept. of Law, Brian L. Crowe, Shefsky, Froelich & Devine, Ltd., Jeffrey Neil Given, City of Chicago, Law Dept. Corp. Counsel, Michael W. Early, City of Chicago, Dept. of Law, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

KENNELLY, District Judge.

Fred Ewing, who is mentally retarded, has sued five Chicago Police Department detectives and other unknown Chicago Police Department personnel, as well as the City of Chicago, for constitutional rights violations he suffered in connection with his arrest and prosecution for two murders he did not commit. The defendants, who are jointly represented by the Corporation Counsel's Office for the City of Chicago, have moved to dismiss Ewing's complaint. For the reasons explained below, we deny defendants' motion.

### Factual Background

On September 16, 1993, Ewing was arrested by detectives Jim O'Brien, J. Halloran, K. Boudreau, G. Carroll and A. Graf without probable cause (according to Ewing) for two murders committed in June and August 1993. Ewing was 17 at the time of his arrest. According to Ewing, the detectives, who knew about his diminished mental capacity, took advantage of his vulnerability to coerce a false confession out of him. The detectives then lied to their supervisors and to the prosecutors about Ewing's confession and influenced the prosecutors to charge Ewing with the murders. The prosecutors bought the story, and the cases proceeded to trial. The detectives testified falsely in pre-trial proceedings and at trial and withheld exculpatory evidence from Ewing and his attorneys. Despite all of this misconduct, Ewing was acquitted of one murder on September 11, 1996 and the other on September 25, 1997.

Ewing now sues the detectives (in their individual capacities) for malicious prosecution and conspiracy under § 1983 (Count I) and malicious prosecution under Illinois law (Count II). He seeks compensatory damages from the detectives, and he seeks to hold the City of Chicago accountable for any judgment he obtains against the detectives (Count III).[1] Defendants have moved to dismiss all three counts of Ewing's complaint under Federal Rule of Civil Procedure 12(b)(6).

### Discussion

#### A. The Applicable Legal Standard

A motion to dismiss the complaint under Rule 12(b)(6) does not test whether the plaintiff will ultimately prevail on the merits; the motion tests whether the plaintiff has properly stated a claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal under Rule 12(b)(6) is proper only if it is clear that Ewing can prove no set of facts consistent with his complaint that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Northern Trust Co. v. Peters,* 69 F.3d 123, 129 (7th Cir.1995). In deciding the motion, we assume all facts alleged in the complaint are true, we construe the allegations liberally and we draw all reasonable inferences in Ewing's favor. *Sneed v. Rybicki,* 146 F.3d 478, 480 (7th Cir.1998); *Wilson v. Formigoni,* 42 F.3d 1060, 1062 (7th Cir.1994).

#### B. Count I—Malicious Prosecution and Conspiracy Under § 1983

In Count I of his complaint, Ewing alleges a federal malicious prosecution claim and a conspiracy claim, both under 42 U.S.C. § 1983. Defendants argue that both claims should be dismissed.

---

1. These are the claims Ewing alleged in the original complaint he filed with the Court on September 8, 1998. There is another version of the complaint in the Court's file, date-stamped February 1, 1999, which is not labeled as an amended complaint though it contains different allegations and claims than the original. For purposes of this motion, the Court has not considered the second complaint because defendants' motion seeks to dismiss the original. If Ewing wants to amend his complaint, he is free to do so, but then defendants would have to have an opportunity to file a new motion addressing issues not covered by this decision.

## 1. Ewing's Federal Malicious Prosecution Claim

The detectives ask the Court to dismiss Ewing's federal malicious prosecution claim because Ewing has no constitutional basis for bringing such a claim. They argue that under *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), Ewing cannot state a malicious prosecution claim under the Fourteenth Amendment and under *Reed v. City of Chicago*, 77 F.3d 1049 (7th Cir.1996), he cannot state such a claim under the Fourth Amendment. The Corporation Counsel's office has raised this argument several times before, to no avail as far as we can tell. We reject the notion that the case law leaves no room for a federal malicious prosecution claim. The result defendants urge is neither just nor supported by the case law.

In *Albright*, which came out of the Seventh Circuit, the United States Supreme Court held that the Fourth Amendment, not the due process clause, governs malicious prosecution claims. This caused quite a ruckus with our Court of Appeals, because the Seventh Circuit cases—including *Albright*—had previously held that a malicious prosecution claim implicates the due process clause, not the Fourth Amendment.[2] Since *Albright*, the Seventh Circuit cases continue to leave the district courts guessing as to which aspect of the Constitution is implicated in a malicious prosecution claim.

In *Reed*, the Seventh Circuit acknowledged that, in light of *Albright*, the question of which constitutional amendment is implicated in a malicious prosecution claim under § 1983 remains "somewhat unclear."

77 F.3d at 1051. But the court had no need to answer the question because Reed's complaint failed to state a malicious prosecution claim: "what [Reed] labels malicious prosecution is nothing more than his time-barred wrongful arrest claim." *Id.* at 1053. Contrary to defendants' assertions, the same cannot be said of Ewing's malicious prosecution claim.

Reed alleged that the defendants (there, as here, detectives with the Chicago Police Department) arrested and held him without probable cause and testified at the hearing to quash his arrest. At bottom, according to the court, this was a claim for wrongful arrest. *Id.* Of particular significance to the court was the lack of any allegation in Reed's complaint that "the detectives falsified any information or evidence" or that the detectives "discovered exculpatory evidence but withheld it from him." *Id.* In contrast, Ewing has alleged such misconduct. He alleges that the detectives withheld exculpatory evidence[3] and that they testified falsely at pre-trial proceedings and at the trials. Thus, Ewing's claim, unlike Reed's claim, is one of malicious prosecution, not false arrest—all of which means we still have to navigate the "*Albright* minefield."

 Although the Seventh Circuit has not firmly decided the constitutional basis for a federal malicious prosecution claim, the court continues—even after *Albright*—to recognize the existence of such a claim. *See Reed*, 77 F.3d at 1051 (discussing elements necessary to state a claim for malicious prosecution under § 1983); *Smart v. Board of Trustees*, 34 F.3d 432, 434 (7th Cir.1994) ("If malicious prosecution . . . is

2. The Court's decision in *Albright* also created tension (still unresolved) with Seventh Circuit precedent (most notably *Wilkins v. May*, 872 F.2d 190 (7th Cir.1989)) setting a rather bright line test for when, in the course of a continuing seizure, the Fourth Amendment ceases to apply and the Fourteenth Amendment is triggered. *See Cervantes v. Jones*, 188 F.3d 805, 809–10 n. 2 (7th Cir.1999). For purposes of this case, though, we need not try to predict how the Seventh Circuit will resolve that tension.

3. Defendants argue that this claim is undermined substantially by the fact that Ewing was acquitted of the murders. But the allegations are not at all inconsistent; indeed, the allegations might simply show that Ewing was able to thwart the detectives' attempts to frame him by getting exculpatory evidence from some other source and by proving his innocence despite the roadblocks the detectives threw at him.

committed by state actors and results in the arrest or other seizure of the defendant, there is an infringement of liberty, but we now know that the defendant's only constitutional remedy is under the Fourth Amendment . . . ."), *cert. denied,* 513 U.S. 1129, 115 S.Ct. 941, 130 L.Ed.2d 885 (1995). And an ever-growing number of judges in this district have determined (or at least recognized) that a federal malicious prosecution claim exists under the Fourth Amendment. See *Newsome v. James,* 968 F.Supp. 1318, 1322–23 (N.D.Ill. 1997) (Plunkett, J.), and cases cited therein (noting that even after *Albright,* the Seventh Circuit has unambiguously recognized a federal malicious prosecution claim under the Fourth Amendment). *See also DelValle v. Rodriguez,* No. 96 C 8089, 1997 WL 695710, at *4–6 (N.D.Ill. Oct. 31, 1997) (Holderman, J.); *Jacobs v. Godinez,* No. 95 C 7020, 1998 WL 128676, at *2 (N.D.Ill. March 18, 1998) (Nordberg, J.); *Salto v. Mercado,* No. 96 C 7168, 1998 WL 142397, at *1 (N.D.Ill. March 24, 1998) (Zagel, J.); *Treece v. City of Naperville,* No. 94 C 5548, 1998 WL 381703, at *2 (N.D.Ill. June 30, 1998) (Williams, J.); *Martin v. DeVriendt,* No. 98 C 0963, 1998 WL 386351, at *4 (N.D.Ill. July 7, 1998) (Conlon, J.).

In *Newsome,* the court noted that it could not find a single case in which the Corporation Counsel's office (which seems to represent the defendants in most of these cases) had convinced a court that a federal malicious prosecution claim no longer exists. In fact, the court threatened sanctions against the Corporation Counsel's office for continuing to press the argument, despite a resounding rejection from the district court judges and a clear indication from the Seventh Circuit (in *Reed* and *Smart* ) that malicious prosecution claims under § 1983 still exist under the Fourth Amendment. We have no intention of imposing sanctions at this time. We find it sufficient to note that no court has yet agreed with the notion that reconciling *Albright* with Seventh Circuit precedent forecloses a malicious prosecution claim under § 1983. This Court is unwilling to slash malicious prosecution claims from § 1983 jurisprudence.

■ Deciding that a federal malicious prosecution claim exists is the first half of the equation; we still have to determine whether Ewing's complaint actually satisfies the elements of such a claim. "To state a claim for malicious prosecution under § 1983, a plaintiff must demonstrate that: (1) he has satisfied the requirements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty." *Reed,* 77 F.3d at 1051 (citing *Smart,* 34 F.3d at 434). The last two elements are undisputed, which leaves only the question of whether Ewing's complaint satisfies the elements of a malicious prosecution claim under Illinois law. We address that issue later in this opinion.

### 2. *Ewing's Conspiracy Claim*

■ Defendants also argue that Ewing's conspiracy claim should be dismissed because the claim is time barred and because the acts committed in furtherance of the conspiracy are covered by absolute immunity. First, Ewing's conspiracy claim is based on the malicious prosecution and therefore did not accrue until his malicious prosecution claim accrued—namely when he was acquitted of the murder charges on September 11 and September 25, 1996. *See Washington v. Summerville,* 127 F.3d 552, 556 (7th Cir.1997). Because Ewing filed this lawsuit on September 8, 1998, the conspiracy claim is timely.

■ Second, if, as Ewing's allegations suggest, the officers' lies affected the prosecutor's decision to charge Ewing and to go to trial, the officers would not be immune from suit. *See Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988). We therefore deny defendants' motion to dismiss Ewing's § 1983 claims.

## C. Count II—Malicious Prosecution Under Illinois Law

■ To state a malicious prosecution claim under Illinois law, Ewing must allege that: (1) he was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in Ewing's favor; and (5) he suffered an injury. *See Reed,* 77 F.3d at 1051 (citing *Curtis v. Bembenek,* 48 F.3d 281, 286 (7th Cir. 1995)). Ewing alleges that he was arrested and charged without probable cause and that he was tried and acquitted. He also alleges that the defendant detectives lied at all stages of the proceedings, causing the prosecutors to charge Ewing with the murders and to proceed to trial on the charges. He alleges that defendants maliciously prosecuted him without probable cause and that as a result of defendants' actions he suffered injuries and damages. These allegations satisfy the elements of malicious prosecution claim under Illinois law.

■ Defendants argue that Ewing's claim must fail because he is unable to allege any post-arrest misconduct by the detectives and because police cannot be charged with malicious prosecution. We have already rejected the first half of this argument: Ewing did allege post-arrest misconduct. In particular, he alleged that the detectives withheld exculpatory evidence and testified falsely at pre-trial proceedings and at trial.

■ We now reject the second half of defendants' argument as well. Defendants argue that prosecutors, not police, prosecute and therefore, prosecutors, not police, maliciously prosecute. The Seventh Circuit has consistently recognized malicious prosecution claims against police officers. And in *Reed* the Seventh Circuit specifically recognized that a malicious prosecution may lie against police officers in situations such as we have here:

> In her concurrence in *Albright,* Justice Ginsburg noted that a malicious prosecution action against police officers is 'anomalous.' 510 U.S. at 279 n. 5, 114 S.Ct. at 816 n. 5. As a general proposition, we agree. This is because the State's Attorney, not the police, prosecutes a criminal action. It is conceivable that a wrongful arrest could be the first step towards a malicious prosecution. However, the chain of causation is broken by an indictment absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor. *Senra v. Cunningham,* 9 F.3d 168, 173 (1st Cir.1993) citing *Dellums v. Powell,* 566 F.2d 167, 192–93 (D.C.Cir. 1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978).

77 F.3d at 1053. *See also Jones,* 856 F.2d at 994 ("a prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield [from liability for civil rights violations] a police officer who deliberately supplied misleading information that influenced the decision"). Reed did not allege any improper influence or knowing misstatements by the detectives involved in his case; nor did he allege that the detectives covered up exculpatory evidence. But Ewing has alleged such misconduct, which means the "chain" was never broken.

Consistent with their argument that Ewing's malicious prosecution claim collapses into a false arrest claim, defendants argue that Ewing's false arrest claim is barred by the statute of limitations. Because we find that Ewing's claim is one of malicious prosecution and not false arrest, we need not reach this question. But a couple of points of clarification are in order. First, though defendants have not argued the point, the Court finds that the malicious prosecution claim is timely; Ewing was acquitted of the murders on September 11 and September 25, 1996 and he filed this lawsuit on September 8, 1998, within the 2–year statute of limitations. *See Washington,* 127 F.3d at 556.

Second, it is puzzling that, in response to defendants' statute of limitations argument, Ewing did not just say: "My claim is for malicious prosecution, not false arrest." Instead, Ewing devoted most of his brief to arguing that the clock does not start ticking on a false arrest claim until the defendant is cleared of any wrongdoing. Justice Ginsburg's concurring opinion in *Albright* supports Ewing's position. *See Albright*, 510 U.S. at 280, 114 S.Ct. 807 ("The time to file the § 1983 action should begin to run not at the start, but at the end of the episode in suit, i.e., upon dismissal of the criminal charges against Albright."). But the Seventh Circuit has consistently held that a cause of action for false arrest accrues at the time of arrest. *See*, e.g., *Kelley v. Myler*, 149 F.3d 641, 645 (7th Cir.1998); *Sneed*, 146 F.3d at 481; *Washington*, 127 F.3d at 556; *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir.1996). And we are bound by those decisions. That is not to say, however, that evidence relating to the false arrest may not be introduced should this case proceed to trial; indeed, such evidence is directly relevant to Ewing's malicious prosecution claim. *See Reed*, 77 F.3d at 1053 (wrongful arrest may be the first step towards a malicious prosecution).

One last item bears mentioning in connection with Ewing's malicious prosecution claims. Defendants argue that Ewing is collaterally estopped from arguing that his confession was coerced because a state court judge found his confession was voluntary. To support their argument, defendants submitted transcripts from a hearing on Ewing's motion to suppress his confession in the state court murder trial and a hearing on a motion to reconsider the court's denial of that motion. First, the "coerced confession" is not the only allegation supporting Ewing's malicious prosecution claim, as we have already noted. Additionally, defendants' summary of what the transcripts say is slightly misleading. The state court judge was not asked to rule on whether Ewing's confession was voluntary. The judge ruled that Ewing understood his *Miranda* warnings

and that he knowingly waived his rights when he gave his statement. Although the judge commented in *dicta* that Ewing "freely and voluntarily gave his statement," he made very clear—especially at the hearing on the motion to reconsider—that his ruling was limited to whether Ewing knowingly and voluntarily waived his *Miranda* rights. This is not the same as saying that the confession Ewing gave after waiving his rights was voluntary.

### D. *Indemnification Against The City*

Lastly, defendants move to dismiss Count III, which seeks indemnification from the City for any judgment obtained against the defendant detectives. Defendants argue that because Ewing's claims against the defendant detectives fail, this claim too must fail. In light of the Court's analysis on the malicious prosecution and conspiracy claims, the Court denies defendants' motion to dismiss the indemnification count.

### *Conclusion*

For the reasons set forth above, the Court denies defendants' motion to dismiss Ewing's complaint.