FILED
**United States Court of Appeals**
**Tenth Circuit**

**February 28, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WALT JASPER SAMUEL SHRUM,

    Plaintiff - Appellant,

v.

DUSTIN COOKE, Investigator, Kingman County, Kansas Sheriff's Office in his official and individual capacities; TRAVIS SOWERS, Sergeant, City of Kingman, Kansas Police Department in his official and individual capacities; KINGMAN COUNTY, KANSAS; CITY OF KINGMAN KANSAS; RANDY L. HILL, Sheriff, Kingman County, Kansas in his official and individual capacities; DAVID LUX, Chief, City of Kingman, Kansas Police Department in his official and individual capacities,

    Defendants - Appellees.

No. 21-3150

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:20-CV-01314-JWB-GEB)**
_____

Brian F. McCallister, The McCallister Law Firm, P.C., Kansas City, Missouri, for Plaintiff-Appellant.

Lyndon W. Vix (Brooks Severson with him on the brief), Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, Kansas, for Defendant-Appellees Travis Sowers, David Lux and City of Kingsman, Kansas.

Allen G. Glendenning, Watkins Calcara, CHTD, Great Bend, Kansas, for Defendants-Appellees Dustin Cooke, Randy Hill and Kingman County.

_____

Before **TYMKOVICH**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

While investigating the overdose death of Walter Shrum's wife, law enforcement officers searched Mr. Shrum's home and discovered drugs, firearms, and ammunition. He was charged with various crimes in federal court. Before trial he argued the officers had illegally searched his home, and that the evidence discovered could not be used against him at trial. The district court disagreed, and Mr. Shrum entered a conditional plea of guilty, reserving the right to appeal the suppression order. On appeal, we concluded the search violated the Constitution, and any resulting evidence should have been excluded.

Without this evidence, the government dismissed its prosecution. Shrum then sued various state and federal law enforcement officials for civil rights violations arising from the illegal search and subsequent prosecution. The district court dismissed the action as time-barred and insufficiently pled.

We agree. First, the district court did not plainly err by dismissing Shrum's § 1983 search, seizure, and false arrest claims as time barred. Shrum fails to prove he is entitled to equitable tolling under Kansas or federal law. Second, reviewing de novo, we agree with him that the district court erred in concluding that his malicious prosecution

2

claim failed because he did not demonstrate the prosecution terminated in a way that demonstrated his innocence. But while that was true at the time the court reviewed the complaint, an intervening change in Supreme Court case law altered Tenth Circuit precedent to allow malicious prosecution claims to proceed when the government dismisses charges as it did here. Nevertheless, because Shrum's complaint inadequately alleges all of the requirements for a malicious prosecution claim against the City and County defendants, we affirm the dismissal of that claim.

# I. Background

A brief review of Shrum's initial encounter with the police and subsequent history and timeline will clarify the issues.

## A. Underlying Search, Seizure, and Arrest

Walter Shrum's wife suffered a medical emergency around 5 a.m. in March 2015 in Kingman, Kansas. He suspected that she overdosed on prescription drugs. Shrum called 911, an ambulance took her to the hospital, and she was pronounced dead within an hour.

Meanwhile, a police sergeant from the City of Kingman, Travis Sowers, arrived at Shrum's house, secured the premises, and apprised a county investigator, Dustin Cooke, of his actions. As a result, officers prohibited Shrum from entering his house for about twelve hours.

The Kingman County Sheriff's Office promptly began a criminal death investigation. Cooke arrived at the hospital to interview Shrum.

Cooke later asked Shrum to execute a "consent to search" form. This form would enable Cooke to retrieve Shrum's wife's prescription drugs. Shrum complied because he thought he had no other choice.

Cooke, with Sergeant Sowers and the Kingman Chief of Police, David Lux, present, entered Shrum's house and took pictures of the area where he found the medications. One photo captured ammunition in Shrum's closet. Another officer reminded Cooke of Shrum's felon status. Cooke contacted a federal officer who confirmed that Shrum was prohibited from possessing ammunition under federal law. A team of county, city, and federal actors (including Cooke and Sowers) executed a search warrant for Shrum's house. They discovered firearms, ammunition, and methamphetamine.

Shrum was arrested and spent about five days in custody.

### B. Shrum's Criminal Prosecution

A few weeks later, a federal grand jury indicted Shrum on various counts of being a felon in possession. Shrum moved to suppress the evidence supporting the search warrant and his arrest, arguing that officers obtained the evidence during an unreasonable search of his house. The court denied his motion.

As a result, Shrum conditionally pled guilty to one count of possession of a firearm by a convicted felon. He reserved his right to appeal the suppression ruling. On appeal, we ruled that the extended seizure of Shrum's home was unconstitutional because the officers lacked probable cause to seize the home in the first instance and no exigent circumstances justified the response. *United States v. Shrum*, 908 F.3d 1219, 1231–32

4

(10th Cir. 2018). We therefore reversed the district court's suppression ruling. After the adverse ruling, the government voluntarily dismissed the charges against Shrum.

### C. Procedural History

Shrum sued the state and federal officers and various municipal employers for violations of his constitutional rights under 42 U.S.C. § 1983 and for intentional and negligent infliction of emotional distress under state law.

The defendants moved to dismiss the claims, arguing they were time barred, insufficiently alleged, and jurisdictionally barred.

The district court determined the statute of limitations barred the § 1983 claims for unlawful search, seizure, and arrest. As to the malicious prosecution claim, the court dismissed it after concluding the criminal prosecution did not terminate in favor of the plaintiff, as then required by Tenth Circuit precedent. The court would also have found the complaint deficient to state a malicious prosecution claim.

Shrum appeals only the dismissal of his § 1983 claims, and only as to the state defendants.

## II. Analysis

Shrum contends the district court erred by failing to extend the statute of limitations to his search and seizure claims, arguing Kansas law allows for equitable tolling during the time he faced criminal charges. He also argues the district court misapplied the "favorable termination" prong in dismissing his malicious prosecution claim.

### A.  Statute of Limitations

Shrum first argues the district court erred by declining to provide equitable tolling for his § 1983 search, seizure, and arrest claims.  He did not make this argument below, so we review for plain error.

When a party fails to raise an issue before the district court, "we usually hold it forfeited."  *Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011).  "[W]e will reverse a district court's judgment on the basis of a forfeited theory" only when the litigant "establish[es] the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* at 1128.  "In civil cases, this burden is extraordinary . . . and nearly insurmountable."  *Somerlott v. Cherokee Nation Distrib., Inc.*, 686 F.3d 1144, 1151 (10th Cir. 2012) (internal quotation marks omitted).

Shrum failed to raise the equitable tolling argument below that he presents on appeal.  To be sure, he raised an argument for equitable tolling before the district court.  But that argument turned on general claims about the burdens of concurrent litigation he faced, a criminal proceeding in federal court and a simultaneous § 1983 civil action based on similar facts.

In his briefs on appeal, Shrum shifted to a new theory based on equitable tolling.  He grounded that theory in the principle that the government should not force an individual to give up one right to vindicate another.  His argument is that to litigate his civil rights suit he would have to admit and use facts that could have then been used against him in the criminal proceeding.  But the district court did not have the opportunity

6

to consider this theory, and "[c]hanging to a new theory on appeal that falls under the same general category as an argument presented at trial . . . is not adequate to preserve issues for appeal." *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1314 n.4 (10th Cir. 1998) (internal quotation marks omitted).

Because Shrum forfeited his equitable tolling theory below, we review the district court's judgment for plain error.[1] Plain error requires a party to establish not just that the district court made an obvious error, but that that error affected his "substantial rights" and "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Richison*, 634 F.3d at 1128.

First, we find no plain error. In a § 1983 action, we look to state law for tolling rules. Under Kansas law, one party's bad faith attempts to delay another party's suit triggers equitable tolling. Fairness requires that the law not reward bad faith attempts at preventing another party from complying with the statute of limitations. *Friends Univ. v. W.R. Grace & Co.*, 608 P.2d 936, 941 (Kan. 1980). Shrum points to Kansas cases that suggest a plaintiff might obtain equitable tolling when he has pursued his rights "diligently" but "some extraordinary circumstance stood in the way and prevented timely filing." *McClain v. Roberts*, 304 P.3d 364, 2013 WL 3970215, at *3 (Kan. Ct. App.

---

[1] Ordinarily, "[w]e review the district court's refusal to apply equitable tolling for an abuse of discretion." *Garrett v. Fleming*, 362 F.3d 692, 695 (10th Cir. 2004). But because Shrum did not raise his current theory below, we find plain error appropriate. Regardless, we would not find the district court abused its discretion in denying equitable tolling for the same reasons we offer here.

2013) (unpublished table decision); *Harris v. Neill*, 216 P.3d 191, 2009 WL 3082642, at *6 (Kan. Ct. App. 2009) (unpublished table decision).

Shrum argues that requiring him to file his § 1983 suit during the pendency of his criminal trial would violate his constitutional rights, and that the spectre of that constitutes an "extraordinary circumstance" preventing timely filing. But we are aware of no case that supports this risk as extraordinary or even unusual. In fact, the Supreme Court does not characterize concurrent litigation as "unusual," holding that "the risk of concurrent litigation . . . [is] an entirely common state of affairs," and observing that it has never "been the law that a criminal defendant, or a potential criminal defendant, is absolved from all other responsibilities that the law would otherwise place upon him[.]" *Wallace v. Kato*, 549 U.S. 384, 396 (2007). We therefore find that Kansas law does not provide for equitable tolling.

Next, even if Kansas law is unavailing, Shrum contends that tolling should apply as a matter of federal constitutional law. He argues the district court should have extended equitable tolling to avoid what he calls an unconstitutional Hobson's choice. Namely, had he tried to timely vindicate his § 1983 claims, he would have needed to offer incriminating evidence in the civil case. The government could then have used that evidence against him in his pending criminal trial. Shrum styles this dilemma as requiring him to choose between vindicating his Fourth Amendment rights and maintaining his Fifth Amendment right against self-incrimination. The district court, he contends, should have extended equitable tolling to vindicate his rights.

For his argument, Shrum relies on *Simmons v. United States*, 390 U.S. 377 (1968). In that case, the petitioner sought the exclusion of evidence at his criminal trial. But under contemporary law, he had to prove ownership of the evidence before contesting its use. And by providing proof, the petitioner provided incriminating testimony that the government then swiftly entered against him. The Court found it "intolerable that one constitutional right should have to be surrendered in order to assert another." *Id.* at 394.

The *Simmons* principle has not had a long shelf-life. Shortly after that case, the Supreme Court explained that "to the extent that [*Simmons*'s] rationale was based on a 'tension' between constitutional rights and the policies behind them, the validity of that reasoning must now be regarded as open to question, and it certainly cannot be given [a] broad thrust. . . ." *McGautha v. California*, 402 U.S. 183, 212–13 (1971). According to the Court, "[t]he criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to follow . . . Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *Id.* at 213 (internal quotation marks omitted).

Lower courts similarly construe *Simmons* narrowly. *See, e.g.*, *United States v. Ashimi*, 932 F.2d 643, 647–48 (7th Cir. 1991) ("*Simmons* does not apply, however, when a defendant is made to choose between a constitutional benefit and a statutory benefit."); *see also United States v. Wilks*, 629 F.2d 669, 672 (10th Cir. 1980) ("The necessity of choosing between holding the government to the exact time limits of the Speedy Trial

Act and requesting time to prepare a defense does not, on the facts of this case, create the sort of trade-off of constitutional rights denounced by *Simmons*. . . .”).

We do not think *Simmons* applies. Because the Supreme Court declined to give *Simmons* “broad thrust” and questioned the vitality of its underlying theory, we cannot endorse a claim that contends there is an unconstitutional “trade-off” between a statutory right—the § 1983 causes of action—and a constitutional right. *McGautha*, 402 U.S. at 213. [2]

In summary, the district court did not plainly err by declining to extend equitable tolling. We affirm the court’s dismissal of Shrum’s search, seizure, and false arrest claims.

### B.  Malicious Prosecution

Shrum next argues that the district court erred by dismissing his malicious prosecution claim for failure to plead “favorable termination,” one of the five elements of a malicious prosecution claim. In light of intervening Supreme Court precedent, the district court misapplied this element. But because the district court’s decision can be

---

[2] We are not persuaded that a trade-off even existed. The Supreme Court observed in different circumstances, “[i]f a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.” *Wallace*, 549 U.S. at 393–94. Surely a similar path would have been available to Shrum had he decided to take it.

supported for the alternative reason that Shrum failed to plead his complaint with the requisite specificity, we affirm the court's judgment.[3]

A § 1983 malicious prosecution claim includes five elements, with this argument turning on the second element: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) *the original action terminated in favor of the plaintiff*; (3) no probable cause supported the arrest, confinement, or prosecution; (4) the defendant acted maliciously; and (5) the plaintiff sustained damages. *Wilkins v DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

Under our precedent, a prosecutor's dismissal, without more, did not constitute favorable termination. *Wilkins*, 528 F.3d at 802–03. Instead, we required that the prosecution was terminated for reasons tending to indicate the accused's innocence. *Id.* An example of this is when a prosecutor enters a *nolle prosqui* (a voluntary dismissal of

---

[3] While our affirmance turns on Shrum's failure to plead his malicious prosecution claim with the specificity required by our precedents, we also note his failure to plead the "probable cause" prong. A key element of the § 1983 malicious prosecution claim requires "no probable cause supported the original arrest, continued confinement, or prosecution." *Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017). Shrum makes only one allegation concerning the baselessness of the prosecution. He claims that "Defendants instigated and continued the unlawful prosecution of Plaintiff Shrum *without probable cause* and acting out of malice." App. 30 (emphasis added). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy our pleading standards. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On appeal, Shrum suggests the prosecution lacked probable cause because it was based on illegally obtained evidence. *See* Aplt. Br. at 34. While the argument enjoys intuitive appeal, we do not think the omission of evidence under the exclusionary rule necessarily retroactively vitiates probable cause in malicious prosecution claims. *See Restivo v. Hessemann*, 846 F.3d 547, 569–71 (2d Cir. 2017); *see also Shaw v. Schulte*, 36 F.4th 1006, 1017–18 (10th Cir. 2022).

criminal charges) after deciding he cannot prove guilt beyond a reasonable doubt. But if an official concludes a prosecution out of mercy for the accused, for instance, the termination did not indicate the accused's innocence. The district court correctly found under our existing precedent that Shrum's prosecution did not terminate in a manner that indicated his innocence.

After the judgment below the Supreme Court clarified the meaning of "favorable termination." The Court found that a criminal prosecution terminates favorably, for the purposes of a § 1983 malicious prosecution claim, when the prosecution ends without a conviction. *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022). The Court explained that "[t]o determine the elements of a constitutional claim under § 1983," we should "first look to the elements of the most analogous tort as of 1871 when § 1983 was enacted, so long as doing so is consistent with the values and purposes of the constitutional right at issue." *Id.* at 1337 (internal quotation marks omitted). And looking to American malicious prosecution tort law, most American courts held that "the favorable termination element of a malicious prosecution claim was satisfied so long as the prosecution ended without a conviction"—no affirmative indication of innocence required. *Id.* at 1338.

As a result, our precedents applying the favorable termination element are no longer good law. The district court therefore erred in granting dismissal on this ground.

## C. *Deficient Pleading*

We nonetheless affirm the district court for the alternative reason raised below. Shrum has failed to adequately plead with specificity all of the other required elements for malicious prosecution against the state officials. We apply a three-part test in

12

considering our discretion to affirm on an alternative ground.  First, we consider whether the litigants fully briefed and argued the issue here and below.  Second, we consider whether the parties had a fair opportunity to develop the factual record.  And third, we consider whether our decision would involve only questions of law.  *Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004).

All of those requirements are met here.  First, the City of Kingman defendants raised the specificity argument below.  App. 42.  The district court noted that the "undifferentiated and non-specific allegations" in the malicious prosecution claim likely rendered the claim deficient.  App. 216.  On appeal, the city defendants re-asserted this argument.  City Br. at 19–24.  And Shrum addressed those arguments in his reply brief.  Reply Br. at 18–22.  Second, the factual record is not at issue because the alternative ground concerns only pleading defects.  And third, the alternative ground concerns only a question of law.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted).

While the federal pleading standard does not vary across subject matters, the degree of specificity required for factual allegations depends on context.  In § 1983 cases, for example, defendants typically sue various government entities alongside various individual actors.  In those cases, "it is particularly important in such circumstances that

13

the complaint make clear exactly *who* is alleged to have done *what* to *whom*." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

We have repeatedly emphasized the importance of connecting defendants to misconduct in pleadings: "To recover damages from each of [multiple] Defendants under § 1983, [Plaintiff] had to show that such Defendant personally participated in the alleged constitutional violation." *Vasquez v. Davis*, 882 F. 3d 1270, 1275 (10th Cir. 2018).

Specificity is particularly important in a complaint alleging malicious prosecution. A complaint could draw many actors into a malicious prosecution claim, but while "a wrongful arrest could be the first step towards a malicious prosecution[,]" "the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor." *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996); *Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996) (adopting the Seventh Circuit's logic).

Shrum's complaint casts a wide net over undifferentiated defendants and therefore falls short of our pleading standards. Consider first the City of Kingman defendants, Sergeant Sowers and Chief Lux. Shrum points us to the "Common to All Counts" allegations section in particular. He emphasizes that "Sowers's name is referred to in the Complaint 19 separate times and Lux's name is referred to in the Complaint 15 separate times." Reply Br. at 21. True enough. But that does not tell us if the complaint makes out "*who* is alleged to have done *what* to *whom*." *Robbins*, 519 F.3d at 1250.

14

Shrum highlights a few allegations that he thinks satisfies our pleading requirements.  He points to his allegation that "Sowers, Chief Lux and Cooke knew that Walt's house was seized without a warrant and without probable cause. . . ."  App. 17.  He directs us to the assertion that "[w]hen he secured Plaintiff's home, Sowers excluded Plaintiff Shrum from his home and (a) did not have a warrant . . . (b) did not have probable cause to secure Plaintiff's home; [and] (c) did not have probable cause to request a warrant be issued for the search. . . ."  App. 18.  And then he highlights the claim that "Cooke and Chief Lux acquiesced in Sowers's seizure of Plaintiff Shrum's home."  App. 18.

The above allegations do not even concern the elements of the malicious prosecution claim.  While the malicious prosecution claim *does* require a showing that the government acted without probable cause,  Shrum's allegations go to probable cause for the *search*.  They do not concern probable cause for the "arrest, continued confinement, or prosecution."  *Wilkins*, 528 F.3d at 799.  And even if the allegations did go to the prosecution's probable cause, Shrum offers no complementary allegations that indicate what role, if any, Sowers and Lux played in the prosecution.  *See Meacham*, 82 F.3d at 1564.  In fact, criminal charges were not brought until several weeks after the search and arrest, and nothing in the complaint alleges what role these state defendants had in pressuring federal prosecutors to bring charges.  The complaint may have put Sowers and Lux on notice that they had been accused of malicious prosecution, but it falls short of properly alleging each officer's role in a way that allows us reasonably to infer liability.

15

Consider next the Kingman County defendant, Dustin Cooke.[4] Cooke features prominently throughout the "Common to All Counts" section. It alleges Cooke questioned Shrum, App. 19, prodded Shrum into signing a consent-to-search form under "false pretenses," App. 21, illegally searched Shrum's home, App. 23, and then secured a search warrant based on evidence from the illegal search. App. 25.

What the complaint does not do is allege Cooke's role in the malicious prosecution. To be sure, the complaint alleges that Cooke, like Sowers and Lux, lacked probable cause to search his home. But those allegations are insufficient for the same reasons listed above. And as to Cooke's role in the prosecution, we are told nothing more.

The "Common to All Counts" section offers only one remaining allegation pertaining to the prosecution:

> Armed with the fruits of the unlawful seizure and subsequent tainted search of Walt's home and having denied Walt access to his home, Walt was unlawfully indicted based upon the tainted evidence, prosecuted and found guilty of significant federal crimes for which he should never have been prosecuted and spent a significant time in prison as a result of the unlawful prosecution.

App. 25–26. The allegation does not identify an offending actor, much less a nameless group of state defendants.

Having failed to piece together a cognizable malicious prosecution claim from the "Common to All Counts" section, we turn to "Count I" of the complaint, where Shrum

---

[4] While Randy Hill, the Sheriff of Kingman County, is listed as an appellee, Shrum conceded below all of his claims against Hill.

explicitly housed the claim. The section almost exclusively uses the collective term "Defendants." When Shrum does identify specific defendants, the allegations do not address any malicious prosecution elements.

Only two allegations come close to invoking the elements of a malicious prosecution claim. First, Shrum alleges "[t]he actions of the Defendants mentioned under this Count resulted in multiple violations of Plaintiff's rights . . . and subsequently resulted in the unlawful prosecution . . . of Plaintiff Shrum in the federal prison system." App. 30. Second, Shrum claims "[b]y all of the above, Defendants instigated and continued the unlawful prosecution of Plaintiff Shrum without probable cause and acting out of malice." *Id.* But neither allegation connects the "unlawful prosecution" with any particular actor—and Shrum levels the claim against six individuals. *See VanZandt v. Okla. Dep't of Hum. Servs.*, 276 F. App'x 843, 849 (10th Cir. 2008) (finding that plaintiffs failed to plead a § 1983 action by "fail[ing] to individualize each Defendant's alleged misconduct from the Defendants as a collective group.").

In short, Shrum's complaint does not tell us who instigated the prosecution or who continued the prosecution. It does not connect the defendants to their allegedly unlawful conduct, and therefore fails to provide fair notice for the basis of the claims against each defendant. *See Robbins*, 519 F.3d at 1250 (citing "fair notice" as a reason for requiring allegations specific to each defendant). The district court's dismissal of the malicious prosecution claim was appropriate on this alternative ground.

17

## III. Conclusion

For the foregoing reasons, we affirm the district court's dismissal of Shrum's § 1983 claims.