In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3688

Bill R. Snodderly, Kathy Snodderly,
and Derick Snodderly, a minor,

Plaintiffs-Appellants,

v.

R.U.F.F. Drug Enforcement Task Force, Board
of Commissioners of Union County, IN, Board
of Commissioners of Shelby County, IN, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Indiana.
No. 98 C 195--John D. Tinder, Judge.

Argued September 13, 2000--Decided February 7, 2001

Before Flaum, Chief Judge, and Bauer and Kanne,
Circuit Judges.

Bauer, Circuit Judge. Plaintiffs-Appellants Bill
Snodderly et al. ("Snodderly") appeal from the
dismissal of a host of federal and state claims
which they brought against several police
officers, an inter-district drug enforcement task
force, and various Indiana municipalities for
damages they claimed to have suffered when Bill
Snodderly was arrested and prosecuted on baseless
drug charges. The district court dismissed all of
the federal claims save for the malicious
prosecution claim against several prosecutor-
defendants as barred by Indiana's two-year
statute of limitations, which is applicable to
all causes of action brought in Indiana under 42
U.S.C. sec. 1983. Finding that the prosecutor-
defendants were absolutely immune from suit on
the federal malicious prosecution claim, the
court dismissed this claim as well, and declined
to exercise pendent jurisdiction over any of the
remaining state law claims. For the reasons set
forth below, we affirm.

BACKGROUND

We take the following factual account from the
plaintiffs' complaint as true, as we must on

review of a motion to dismiss. Snodderly owns the C.C. Tavern in West College Corner, Indiana. On October 4, 1993, the R.U.F.F. Drug Enforcement Task Force sent Michael Zinman, an undercover informant, to West College Corner to attempt to buy illegal drugs from potential suspects. Later that day, Zinman informed R.U.F.F. Officer Patrick that he had made arrangements to purchase two ounces of marijuana from a man named "Bill," who had been identified to Zinman as a bartender at the C.C. Tavern. Officer Keith contacted Officer Marcum to determine the identity of "Bill the Bartender," and Marcum sent Keith a photograph of Snodderly. That evening, Officer Haehl of the R.U.F.F. Task Force accompanied Zinman (who was "wired" with audio recording equipment) to the C.C. Tavern and made the pre-arranged drug purchase as planned. Either before or during the purchase, Bill the Bartender told Zinman and/or Haehl where he lived and what type of vehicle he drove./1 Zinman and Haehl subsequently returned to the C.C. Tavern several times in hopes of purchasing more drugs from Bill the Bartender. However, they never saw him at the tavern again.

The R.U.F.F. officers made Snodderly the focus of their investigation, operating on the assumption that he was "Bill the bartender." The officers did not follow up on leads that might have indicated that Snodderly was not Bill the Bartender (for example, they apparently did not compare Bill the Bartender's description of his residence and vehicle with Snodderly's residence and vehicle). Together with two Indiana state prosecutors,/2 Officer Haehl prepared an affidavit for an arrest warrant against Snodderly, which included "false" representations as to the existence of probable cause. Snodderly was arrested by R.U.F.F. Officer Keith on April 15, 1994/3 in the presence of his wife, son, and many neighbors, and was detained for some unspecified time before posting bond and being released on the same day. Snodderly was charged with bulk sale of marijuana. The charge was dismissed by an Indiana state court on February 5, 1997.

On February 13, 1998, Snodderly filed a complaint in the United States District Court for the Southern District of Indiana against the R.U.F.F. Drug Enforcement Task Force, several municipalities in Indiana that organized the Task Force, various R.U.F.F. officers and state prosecutors who participated in his arrest and prosecution, and various John and Jane Does. The complaint, as subsequently amended, asserted a claim under sec. 1983 for damages resulting from Snodderly's arrest and prosecution, which occurred in violation of the Fourth, Eighth, and

Fourteenth Amendments to the United States Constitution. Specifically, Snodderly claimed that the "[d]efendants deprived [him] of his rights to be secure in his person and property, freedom from unreasonable arrest, search and seizure, freedom from false arrest, unlawful arrest, freedom from arrest without probable cause, freedom from unreasonable bail bond, freedom from malicious prosecution, and due process of law." The gravamen of Snodderly's sec. 1983 claim is that the defendants caused him to be arrested without probable cause, and continued to prosecute him while knowing that he was not guilty of the crime charged. Snodderly also asserted a smorgasbord of pendent state law claims against various individual defendants, including a claim for false arrest against Officer Keith,/4 a claim for unlawful arrest against defendants Keith, Haehl, and other officers, and a claim for malicious prosecution against Haehl and various prosecutor-defendants. In support of the latter claim, Snodderly claimed that on or about April 6, 1994 (nine days before Snodderly's arrest), Haehl and two prosecutors filed an affidavit with the clerk of Union Circuit Court in Indiana charging Snodderly with the Class D felony of dealing in marijuana, even though they had no probable cause to do so. Snodderly further stated that the trial court granted him a motion to suppress photo-lineup evidence when "it was found that the photographic line-up had been destroyed approximately two years earlier."

The district court dismissed all of Snodderly's claims. Noting that Indiana's two-year statute of limitations for personal injuries applies to sec. 1983 claims, and that Snodderly had filed his original complaint on February 13, 1998, the court ruled that any sec. 1983 claims that accrued more than two years prior to that date were time-barred. Applying this rule, the court held that all of Snodderly's sec. 1983 claims against the police officers were time-barred, because they were based on actions alleged to have taken place more than two years prior to the filing of Snodderly's complaint. The court then dismissed the only remaining federal claim-- namely, the claim that the prosecutor-defendants pressed forward with the prosecution of Snodderly despite their knowledge that they lacked evidence to establish his guilt on the charged offense--on the ground that prosecutors are absolutely immune from such charges. Having dismissed all of Snodderly's federal claims, the court declined to exercise supplemental jurisdiction over the state law claims, and dismissed those claims for lack of jurisdiction. Snodderly subsequently filed this appeal, challenging only the district court's dismissal of his sec. 1983 claims against

the police officers./5

DISCUSSION

We review the district court's dismissal of a plaintiff's complaint de novo, and we will only affirm a dismissal "if it is clear that [the plaintiff] can prove no set of facts consistent with his complaint which would entitle him to relief." Sneed v. Rybicki, 146 F.3d 478, 480 (7th Cir. 1998) (citation omitted). We must accept all well-pleaded facts in the complaint as true, and draw all reasonable inferences in favor of the nonmoving party. See id. However, "we are not obliged to accept as true conclusory statements of law or unsupported conclusions of fact." Id.

Snodderly argues that the district court erred in dismissing his sec. 1983 false arrest claim as time-barred. While he agrees with the defendants that Indiana's two-year statute of limitations for personal injury actions applies to claims brought under sec. 1983, he takes issue with the district court's conclusion as to when the limitations period began to run on his claim. Specifically, Snodderly maintains that under Heck v. Humphrey, 512 U.S. 477 (1994), as interpreted by Edwards v. Balisok, 520 U.S. 641 (1997), his cause of action for false arrest did not accrue until the legal proceedings brought against him had terminated in his favor, and that therefore the applicable two-year limitations period did not begin to run until the drug-related charges for which he was arrested were dropped on February 5, 1997. Since he filed his false arrest claim within two years of that date, Snodderly contends that the claim was timely and should not have been dismissed./6 While we reject Snodderly's interpretation of Edwards and his argument regarding the application of Heck to claims for false arrest in general, we agree with his contention that his claims against the R.U.F.F. officers did not accrue until the charges against him were dismissed, and were therefore timely brought.

Heck involved a sec. 1983 damages claim asserted by a prison inmate against a police investigator and two prosecutors who had participated in the prosecution against him. (The inmate had been convicted and sentenced on a charge of voluntary manslaughter.) The inmate's claim stated that the prosecutors and the investigators, while acting under color of state law, had engaged in an unlawful and unreasonable investigation which led to his arrest, that they had knowingly destroyed exculpatory evidence, and that they had caused an illegal voice identification procedure to be used at his trial. The inmate sought punitive and compensatory

damages, but did not seek release from custody. The Supreme Court framed the question before it as "whether money damages premised on an unlawful conviction could be pursued under sec. 1983." In answering that question in the negative, the Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a sec. 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeus corpus, 28 U.S.C. sec. 2254." Heck, 512 U.S. at 486-87. Thus, under Heck, a sec. 1983 claim for damages is not cognizable (i.e. does not accrue) if a judgment in favor of the plaintiff on that claim "would necessarily imply the invalidity of [the plaintiff's] conviction or sentence." Id. at 487. However, if a district court determines that judgment for the plaintiff on the sec. 1983 damages action would not "demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," the action is cognizable and should be allowed to proceed, in the absence of some other bar to the suit. See id.

In footnote seven to its opinion, the Court provided an example of a sec. 1983 claim which would not necessarily demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, and which could therefore be brought without a showing that any outstanding conviction or sentence had been invalidated. The Court stated:

[A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the sec. 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, see Murray v. United States, 487 U.S. 533, 539 (1988), and especially harmless error, see Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991), such a sec. 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the sec. 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, see Memphis Community School Dist. v. Stachura, 477 U.S. 299, 308 (1986), which, we hold today, does not encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

Heck, 512 U.S. at 487 n.7.

   In applying Heck in general, and footnote seven
in particular, we have ruled that any sec. 1983
claim for damages resulting from a false arrest
is not barred by Heck and accrues immediately
after the arrest, because such alleged violations
of the Fourth Amendment would not necessarily
impugn the validity of a conviction. See, e.g.,
Copus v. City of Edgerton, 151 F.3d 646, 648-49
(7th Cir. 1998); Gonzalez v. Entress, 133 F.3d
551, 553 (7th Cir. 1998); Booker v. Ward, 94 F.3d
1052, 1056 (7th Cir. 1996); Simpson v. Rowan, 73
F.3d 134, 136 (7th Cir. 1995). In explaining our
holdings, we have reasoned that "wrongful
detentions [are] actionable under state law and
the fourth amendment no matter what happens to
the criminal prosecution" (i.e., that the injury
of being detained illegally is compensable
regardless of whether the plaintiff is later
convicted or even prosecuted, see, e.g.,
Gonzalez, 133 F.3d at 553), and that "one can
have a successful wrongful arrest claim and still
have a perfectly valid conviction." Booker, 94
F.3d at 1056 (7th Cir. 1996) (citations omitted).
We have applied this principle categorically to
all sec. 1983 claims for false arrest, ruling
that "Fourth Amendment claims for unlawful
searches or arrests do not necessarily imply a
conviction is invalid, so in all cases these
claims can go forward." Copus, 151 F.3d at 648.

   However, while Snodderly acknowledges that we
have taken a categorical approach in our
application of Heck to false arrest cases and
have consistently held that a cause of action for
false arrest accrues immediately upon the arrest
notwithstanding Heck, he contends that Edwards v.
Balisok, 520 U.S. 641 (1997) requires us to
rethink our position. In Edwards, an inmate who
was found guilty of prison infractions at a
disciplinary hearing and subsequently deprived of
good-time credits sued under sec. 1983, claiming
that the procedures used during the disciplinary
hearing violated his Fourteenth Amendment due
process rights. Specifically, the inmate alleged,
inter alia, that the hearing officer "concealed
exculpatory witness statements and refused to ask
specified questions of requested witnesses, which
prevented [the inmate] from introducing extant
exculpatory material and 'intentionally denied'
him the right to present evidence in his
defense." Id. at 644 (record citations omitted).
He further claimed that the hearing officer was
biased against him, and that his deceit and bias
caused the exclusion of the exculpatory evidence.
See id. at 647. Presumably in an effort to avoid
the application of Heck to his claims, the inmate
sought damages only for the prison officials'

having denied him the good-time credits without due process, not for their depriving him of the good-time credits per se. See id. at 645. (In other words, his claim contended that the procedures used were improper, but not necessarily that the resulting decision to deprive him of the credits was wrong as a substantive matter.) The district court found the claim barred by Heck, and the Court of Appeals reversed, holding that a claim challenging only the procedures employed in a disciplinary hearing--and not the result--is always cognizable under sec. 1983. See id. at 645. The Supreme Court reversed. Reasoning that courts routinely reinstate good-time credits when an inmate can show that he was denied the opportunity to put on any witness testimony in his defense, and that "[a] criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him," the Court concluded that the procedural defects claimed by the inmate "would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." See id. at 646-47. Therefore, applying Heck, the Court held that the inmate's claims were not cognizable under sec. 1983.

Snodderly argues that Edwards undermines the categorical approach that we have previously taken in determining the applicability of the Heck rule to false arrest cases. Specifically, he contends that after Edwards we must determine in each instance whether, under the particular facts of a given case, a civil suit challenging the validity of an arrest would impugn a criminal conviction. If it would, Snodderly asserts that we must find that the false arrest claim does not accrue until the proceedings against the plaintiff have terminated in the plaintiff's favor./7 In this case, Snodderly maintains that his false arrest claim (if brought before the drug charges against him were dismissed) would have necessarily impugned any potential/8 conviction on the charges, because his challenge to his arrest is premised on the claims that he is not, in fact, "Bill the bartender" and that the arresting officers had information in their possession pointing towards his innocence before they arrested him. According to Snodderly, success on this particular claim--unlike success on a claim such as excessive force which challenges only the manner of arrest--would necessarily challenge any potential conviction on the drug charges, because if Snodderly is not "Bill the bartender," then he by definition could not be guilty of the crime charged.

We find Snodderly's arguments unavailing for several reasons. First, Edwards is readily

distinguishable and is of no help to Snodderly. In Edwards, the plaintiff challenged the procedures used to determine his guilt of disciplinary infractions, and claimed as an element of damages the harm caused him by his being incarcerated pursuant to those faulty procedures. Therefore, the plaintiff's claims, if successful, would necessarily have undermined the validity of the legal decision to deny him the good-time credits. This is so even though the plaintiff did not expressly challenge the result reached by the hearing officers (instead attacking only the procedures used during the hearing) because a claim that proves procedural defects of the kind that would necessarily mandate reversal of the proceedings (e.g., bias or deceit of the decision-maker) necessarily implies that the results of those proceedings were invalid. This would disturb the finality of an outstanding legal judgment, and this is exactly what Heck seeks to prevent. Furthermore, the Edwards plaintiff sought damages from his "sentence" (i.e., from the deprivation of good-time credits pursuant to inadequate procedures), and Heck forbids claims for damages from convictions or sentences while the judgment imposing them stands. In contrast, a claim for false arrest, insofar as it seeks damages for the arrest only, would not necessarily imply the invalidity of any future conviction or sentence. A plaintiff could succeed on a false arrest claim by demonstrating that he was arrested without probable cause (for example, by showing that the arresting officers ignored exculpatory information and arrested him with little or no basis for suspecting that he committed the crime); however, this would not demonstrate the invalidity of a future conviction for the same offense. A person can be validly convicted regardless of the quantum of evidence possessed by the police at the time of arrest. Put another way, even if the evidence available to the police would not legally justify an arrest, other evidence might surface later which would support a valid conviction. As we have said, damages for false arrest are free-standing and completely independent from any damages caused by a subsequent prosecution or conviction: "One can have a successful wrongful arrest claim and still have a perfectly valid conviction." Booker, 94 F.3d at 1056. Edwards does not compel a different conclusion. Therefore, if Snodderly were claiming damages for his false arrest only (as distinct from the harm of having been prosecuted on baseless charges), his claims would accrue immediately upon his arrest.

However, while it was not acknowledged in the briefs of either party, a more difficult issue remains concerning the applicability of Heck to

Snodderly's false arrest claim. Unlike the false arrest claims that we have had occasion to consider in the cases cited above, Snodderly's arrest was effected pursuant to a warrant. The issuance of an arrest warrant is an act of legal process that signals the beginning of a prosecution. Therefore, Snodderly's sec. 1983 wrongful arrest claim seeks damages for confinement imposed pursuant to legal process, thereby making it akin to a malicious prosecution claim and triggering the application of Heck./9 See Antonelli v. Foster, 104 F.3d 899, 900-01 (7th Cir. 1997). In Antonelli, we held that an inmate's claim for damages for invalid confinement pursuant to a federal parole violator warrant would not accrue (per Heck) until the confinement was "held to be unlawful in the proper forum." Id. We reasoned that "[a] suit for damages for confinement pursuant to a warrant would . . . be a suit for malicious prosecution," (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts sec. 119, p. 871 (5th ed. 1984)), which can succeed "only if the prosecution fails," and that such a claim, like the claim addressed in Heck, would not be cognizable until the confinement had been ruled invalid. Id. at 900. We held this rule applicable to any claim complaining of preconviction confinement that is imposed pursuant to legal process (such as a warrant) since, in such cases, "the unlawfulness of the plaintiff's being confined pursuant to legal process [is] an implicit or explicit ingredient of his case." Id. at 901. Other circuits applying Heck to claims of unlawful arrest made pursuant to warrants--some of which are virtually identical to Snodderly's claim--have similarly held that such claims do not accrue until the proceedings have terminated in the plaintiff's favor (i.e., until the prosecution has ended in acquittal or dismissal of the charges). See, e.g., Whiting v. Traylor, 85 F.3d 581, 585-86 (11th Cir. 1996); Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996); Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 4 (1st Cir. 1995). These courts have reasoned that claims for unlawful arrests made pursuant to a warrant would have been brought as malicious prosecution claims under the common law, and that Heck imposes a "favorable termination" requirement on sec. 1983 claims that resemble malicious prosecution. See, e.g., Calero-Colon, 68 F.3d at 3-4.

Therefore, we hold that the district court erred in holding Snodderly's claims against the R.U.F.F. officers to be time-barred. The court made the blanket statement that any claims based on actions occurring more than two years prior to the filing of the original complaint were untimely, presumably assuming that this included

not only Snodderly's false arrest claims, but also any claims for malicious prosecution that Snodderly may have stated against the police officers. However, the court did not consider the potential applicability of Heck, which holds that claims resembling malicious prosecution do not accrue until the prosecution has terminated in the plaintiff's favor, and Antonelli, which holds that claims for unlawful arrests made on warrants are really claims for malicious prosecution. Thus, regardless of when the police performed the acts at issue, to the extent that Snodderly's claims against the officers state claims for malicious prosecution (as opposed to false arrest) they could not have been brought while the charges against Snodderly remained pending. The charges against Snodderly were dismissed on February 5, 1997. Since his complaint was filed within two years of that date, the malicious prosecution charges stated in the complaint were timely.

However, notwithstanding the district court's error, we may affirm its dismissal of the complaint on any ground that finds support in the record. See Cushing v. City of Chicago, 3 F.3d 1156, 1167 (7th Cir. 1993). Even though a well-pleaded sec. 1983 claim for malicious prosecution against the police officers would not have been time-barred in this case, we hold that Snodderly has failed to state a claim for malicious prosecution under sec. 1983, even under the liberal pleading requirements of Fed. R. Civ. P. 12(b)(6).

In his amended complaint, Snodderly made several claims against the police officers. First, as a general claim, Snodderly asserted that all of the defendants (police officers and prosecutors) "caused the prosecution [of Snodderly] knowing that he was not the proper person to be accused." Second, in support of his sec. 1983 claim for "violation of civil rights" (which included a claim of malicious prosecution against all defendants), Snodderly realleged his claims that Officer Haehl, together with two prosecutors, prepared a falsely represented statement of probable cause in applying for an arrest warrant, and that the defendants pursued the investigation and charging of Snodderly even though they had earlier become aware of evidence that would have provided the true identity of "Bill the bartender" (including information about his vehicle and place of residence). He also stated as part of his sec. 1983 claim that Officer Keith had obtained a photo of Snodderly before the pre-arranged drug buy with "Bill the Bartender." Third, in support of his state law malicious prosecution claim against the police officers, Snodderly asserted that Officers Haehl and Keith,

together with two prosecutors, "initiated criminal proceedings" against him without probable cause by filing an affidavit with the Clerk of the Circuit Court in Liberty, Indiana, charging him with the class D felony of dealing in marijuana, and that the trial court granted Snodderly's motion to suppress photographic line-up evidence when it found that the evidence had been destroyed approximately two years earlier.

However, in order to state a claim for malicious prosecution against the police officers under sec. 1983, Snodderly must do more than merely claim that they arrested and detained him without probable cause. See Sneed, 146 F.3d at 481 (7th Cir. 1998) (citation omitted); rather, he must allege that the officers committed some improper act after they arrested him without probable cause, for example, that they pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence. See Reed v. City of Chicago, 77 F.3d 1049, 1053-54 (7th Cir. 1996). Snodderly made no such allegations as part of his sec. 1983 claims against any of the police officers in his amended complaint. While he did claim that Officers Haehl and Keith, together with two prosecutors, filed an affidavit charging him with dealing in marijuana, these claims were not part of his sec. 1983 claims, but were rather part of his state law malicious prosecution claims, the dismissal of which he is not challenging. Cf. Washington, 127 F.3d at 559. Perhaps more significantly, Snodderly did not claim that either officer exerted any pressure or influence on the prosecutors either to apply for the arrest warrant/10 or to indict him, that they made knowing misstatements to the prosecutors, or that they testified falsely at any subsequent adversarial proceeding. As we have noted, "a malicious prosecution action against a police officer is 'anomalous,'" see Reed, 77 F.3d at 1053 (quoting Albright v. Oliver, 510 U.S. 266, 279 n.5 (Ginsburg, J., concurring)), because the State's Attorney, not the police, prosecute a criminal action. Reed, 77 F.3d at 1053. Absent a claim that Haehl or Keith played more of an essential or influential role in seeking or procuring the arrest warrant or indictment, Snodderly's bare-bones assertions against them are insufficient to state a claim for malicious prosecution.

One final point bears mentioning. In his appellate brief, Snodderly asserted certain factual claims that he did not plead in his amended complaint. Specifically, Snodderly claimed that: (1) while Zinman described Bill the bartender as in his twenties, about 5'10", thin

and with a mustache, Snodderly was in his 40s, had a beard, was 5'7" and portly at 185 pounds; (2) the R.U.F.F. Task Force was aware that "Bill the bartender" said that he lived in a trailer, whereas Snodderly lived in, and was arrested in, a house; (3) Haehl became the complaining witness for the Task Force when, despite his own misgivings and no personal knowledge, he signed an affidavit that identified Snodderly as the person who had made the drug sale to Zinman, on the basis of which an arrest warrant was issued; and (4) members of the Task Force destroyed the evidence from a photo-lineup that would have shown that plaintiff Snodderly was not "Bill the bartender."

We do not think that it would be appropriate for us to consider these allegations as part of Snodderly's claim, since they were advanced too late. Arguments raised for the first time on appeal are routinely deemed waived. See Perry v. Sullivan, 207 F.3d 379, 383 (7th Cir. 2000). While plaintiffs are allowed to argue new facts and theories on appeal to avoid a motion to dismiss under Fed. R. Civ. P. 12(b)(6) so long as they are consistent with the complaint, see Dawson v. General Motors Corp., 977 F.2d 369, 372 (7th Cir. 1992), Snodderly's complaint was dismissed as time-barred, and not for failure to state a claim. Therefore, he does not benefit from the liberal pleading rules allowed under Rule 12. See Perry, 207 F.3d at 383. Moreover, even if we were to consider Snodderly's new claims, it would not change our holding. If the officers applied for an arrest warrant despite having knowledge that pointed towards Snodderly's innocence (such as information about "Bill the bartender" that appeared to distinguish him from Snodderly), this would make them responsible for initiating his arrest, but not for causing his prosecution unless they performed some post-arrest action which influenced the prosecutor's decision to indict. See Reed, 77 F.3d at 1053 ("It is conceivable that a wrongful arrest could be the first step towards a malicious prosecution. However, the chain of causation is broken by the indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor.") (citation omitted). As we have noted, Snodderly has alleged no such actions on the part of the officers. Furthermore, while an assertion that police officers destroyed exculpatory photographic line-up evidence will frequently state a claim against malicious prosecution against them, see generally Reed, 77 F.3d at 1054, it is not clear that Snodderly's claim would do so here. In deciding a motion to dismiss for failure to state a claim, we are not "obliged to accept as true unsupported

allegations of fact." See Sneed, 146 F.3d at 480. Snodderly does not tell us what the line-up evidence would have revealed, or how it would have been exculpatory. Indeed, given that Snodderly states that he had originally moved to suppress the line-up evidence, his conclusory assertion that it was "exculpatory" seems puzzling, if not disingenuous.

CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

/1 The complaint merely states: "during the course of making arrangements to make the purchase and during the purchase, defendants became aware of certain evidence that would provide the true identity of BB, which included his place of residence and the vehicle he drove." Later, in his appellate brief, Snodderly asserts that "the Task Force was aware that 'Bill the bartender' said he lived in a trailer."

/2 Snodderly originally named several Indiana prosecutors as defendants in both his sec. 1983 claim and in some of his pendent state law claims. However, by agreement of the parties, the prosecutor-defendants were dismissed from the action before this appeal.

/3 In one of his state law claims, Snodderly asserts that he was arrested on October 4, 1993. It is unclear whether he is alleging two arrests in his federal claim, or only the April 15, 1994 arrest. The district court discussed only the latter arrest, and Snodderly does not contest this on appeal, so we will address only that arrest as well.

/4 Snodderly claimed that Keith arrested him on a "false warrant." He also claimed that Keith lacked the authority to arrest him, but provides no facts in support of this claim.

/5 As we have noted, the prosecutors named in the amended complaint are no longer defendants. Moreover, Snodderly does not challenge the district court's decision not to exercise supplemental jurisdiction over his state law claims, and agrees that if the district court's dismissal of his sec. 1983 claims against the police officers was proper, then its dismissal of the state law claims for lack of jurisdiction was also proper.

/6 The appellees argue that Snodderly has waived any argument regarding the applicability of Heck to his claims. However, we reject this argument,

because Snodderly clearly raised the issue before the district court in his Memorandum Contra to Defendants' Motions to Dismiss.

/7 Snodderly notes that other circuits have endorsed this fact-sensitive method of determining the applicability of the Heck rule to sec. 1983 claims stating Fourth Amendment violations. See, e.g., Shamaeizadeh v. Cunigan, 182 F.3d 391, 398-99 (6th Cir. 1999); Covington v. City of New York, 171 F.3d 117, 123-24 (2d Cir. 1999).

/8 It should be noted that we have not limited the application of Heck to situations involving outstanding convictions. Rather, joining other circuits, we have interpreted Heck as barring damage claims which, if successful, would necessarily imply the invalidity of a potential conviction on a pending criminal charge. See Washington v. Summerville, 127 F.3d 552, 556 (7th Cir. 1997).

/9 Snodderly's complaint purports to state claims under sec. 1983 both for false arrest and for malicious prosecution. On appeal, he challenged the district court's dismissal of both claims. However, we find that on the facts presented Snodderly cannot state a claim for false arrest. Strictly speaking, a claim for false arrest is a claim for the harm of being unlawfully imprisoned through some extrajudicial act that does not amount to legal process, for example, when a police officer performs a warrantless arrest without probable cause. See, e.g., Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998); Singer v. Fulton County Sheriff, 63 F.3d 110, 117-18 (2d Cir. 1995). A claimant pleading false arrest can pursue damages only for the detention that occurred "up until issuance of process or arraignment, but not more." Heck, 512 U.S. at 484 (citing W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on Law of Torts 888 (5th ed. 1984)). In contrast, malicious prosecution permits damages for "confinement imposed pursuant to legal process." Heck, 512 U.S. at 484. The issuance of a warrant is "legal process." Thus, a claim seeking damages for unlawful confinement imposed pursuant to a warrant sounds not in false arrest, but in malicious prosecution. See Singer, 63 F.3d at 117 ("When an unlawful arrest has been effected by a warrant an appropriate form of action is malicious prosecution.") (quotation omitted); Porterfield, 156 F.3d at 568 ("[A] claim for false arrest may be considered only when no arrest warrant has been obtained.").

/10 In his brief to this court, Snodderly asserts that Haehl signed an affidavit identifying him as "Bill the bartender," and that the arrest warrant was issued on the basis of this affidavit.

However, in his amended complaint, Snodderly alleged that the arrest warrant was based upon a "falsely represented statement of probable cause" which was prepared by Haehl and two prosecutors. The complaint did not allege that Haehl exerted any influence upon the prosecutors' decision to apply for the warrant, or that Haehl misled the prosecutors in any way (either by misrepresenting relevant facts or by omitting them).