**Gremar MCDADE, Plaintiff–Appellant,**

v.

**Officer Gregory STACKER and Officer Victor Johnson, Defendants– Appellees.**

No. 03–2681.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 2004.

Decided July 14, 2004.

---

Darryl L. Robinson, Chicago, IL, for Plaintiff–Appellant.

Myriam Zreczny, Office of the Corporation Counsel, Chicago, IL, for Defendants–Appellees.

Before POSNER, EASTERBROOK, and MANION, Circuit Judges.

### ORDER

Gremar McDade was arrested and charged in Illinois state court with possession of marijuana with intent to distribute. After spending ten months in jail pending trial, he was acquitted. He then filed suit against the two officers involved in his arrest, their supervisor, the City of Chicago, and the Chicago Police Department, alleging unlawful arrest in violation of the Fourth Amendment and several state law claims. The district court dismissed the claims against the Chicago Police Department and the officers' supervisor and granted the officers summary judgment. McDade then voluntarily dismissed the City of Chicago. McDade appeals.

### I.

On December 10, 2000, Chicago police officers Gregory Stacker and Victor Johnson received a call from dispatch that an individual had reported that a narcotics sale was taking place in front of a house located at 11817 South Perry Avenue. Drug transactions were apparently fairly common in that area, where street gangs were active, and residents often called to report narcotics activities.

After receiving the call, the officers went to the 11817 South Perry address to conduct surveillance. They positioned themselves across the street and for about 15 minutes watched a group of individuals who were standing outside in the cold. The officers saw the plaintiff, Gremar McDade, approach the group. McDade then left the group, heading northbound, as another individual, Cortez Hassel, began walking toward him. As McDade and Hassel passed each other, the officers saw what they believed was an exchange between the two of a bag of marijuana. In response, the officers approached McDade and Hassel, and, with their guns drawn, ordered the two to get on the ground. As McDade and Hassel laid down, Hassel dropped a bag of marijuana in front of Officer Stacker. Officer Stacker then placed McDade and Hassel under arrest. McDade claims that, after he accused the officers of intending to plant drugs on him, Officer Stacker shoved him against a porch railing, telling him to shut up.

While Officer Stacker was arresting the duo, Officer Johnson had knocked on the door of 11817 South Perry. (McDade's nieces and nephews lived at that address, and according to Officer Stacker, when the officers arrested McDade, McDade claimed that he was not selling drugs, but was visiting someone who lived at that address.) Terri Lewis answered the door and indicated that she recognized Gremar McDade and Cortez Hassel. According to McDade, Officer Johnson then left the residence, but about 20 minutes later, both Officers Johnson and Stacker returned, knocked on Lewis's door, and allegedly

walked right in. They then allegedly questioned Lewis and the two other men who were visiting, Nicholas Caldwell and Nathaniel Tate. McDade claims that the officers then asked Tate to open a bedroom that was locked, and then took Tate into the bedroom with them. When they reappeared, McDade claims, the officers had seized a box that contained 262.2 grams of marijuana in multiple bags, at which time Officer Stacker allegedly told McDade, "I got a case now; I got a case now. This is going with you." The marijuana from the box was packaged similarly to the bag that Hassel had dropped.

The officers then took McDade to the police station and charged him with possession with intent to deliver the 2.2 grams of marijuana dropped by Hassel and possession of the 262.2 grams of marijuana alleged recovered from the house. McDade pleaded not guilty, but remained in jail for ten months pending trial because he was on probation at the time of his arrest and was therefore denied bond. Following a jury trial, he was acquitted. McDade then filed suit against the City of Chicago, the Chicago Police Department, Superintendent Terry Hillard and Officers Stacker and Johnson, alleging an unlawful arrest in violation of the Fourth Amendment, false imprisonment, assault and battery, intentional infliction of emotional distress, and malicious prosecution. The district court dismissed the counts against the Chicago Police Department and Superintendent Hillard. The plaintiff agreed to voluntarily dismiss the City of Chicago from the case, but the court failed to enter an order doing so. The district court then granted Officers Stacker and Johnson summary judgment, stating in the Rule 58 judgment order that: "The remaining defendants having been previously dismissed, this action is hereby terminated." McDade then filed an appeal from the district court's order entering summary judgment in favor of Officers Stacker and Johnson. This court responded with an order noting that "it is not clear that the district court disposed of plaintiff's claims against defendant City of Chicago." The order directed the parties to file a memorandum stating why this appeal should not be dismissed for lack of jurisdiction. McDade responded by filing a motion in the district court to voluntarily dismiss all claims against the City of Chicago, which the district court granted. This appeal then proceeded.

## II.

On appeal, McDade claims that the district court erred in granting the defendants summary judgment on his various claims. Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). We consider each of McDade's claim in turn, reviewing the grant of summary judgment de novo and viewing the facts in the light most favorable to McDade. *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir.1997).

### A. Fourth Amendment

McDade first claims that the officers violated his Fourth Amendment rights by arresting him without probable cause. Initially, we note that in making this argument, McDade fails to distinguish between the two different encounters with the officers. The initial encounter occurred when the officers approached McDade and Hassel, ordering them on the ground. This temporary restraint on their movement constituted a *Terry* stop, and thus is justified by a reasonable suspicion of criminal activity. *See United States v.*

*Mancillas,* 183 F.3d 682, 695 (7th Cir.1999) (holding that a police officer may conduct an investigative stop if he can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion"). Here, the undisputed facts demonstrate that the officers had a reasonable suspicion to stop McDade: They had received a call about a drug deal in the vicinity, and they observed what they believed to be McDade giving Hassel a packet of marijuana. That was sufficient to justify the *Terry* stop.

■ After ordering the two to the ground, the officers observed Hassel drop a packet of marijuana. The officers then arrested McDade and Hassel. An arrest must be supported by probable cause. In this case, the report of a drug deal, the apparent transfer of a packet of marijuana, and the recovery of a packet of marijuana established probable cause to support McDade and Hassel's arrest.

■ In response, McDade attempts to discredit the officers' testimony by showing that the officers could not have seen what they claimed to have observed. For instance, McDade cites Officer Johnson's testimony that he and Officer Stacker set up surveillance across the street from 11817 South Perry, and then points to his own testimony that when he arrived at 11817 South Perry, he did not see the police. However, the fact that McDade did not see the police does not call into question the officers' testimony that they were there. In fact, given that the officers were conducting surveillance, it is not surprising that McDade did not see them.

McDade also argues that the officers lacked probable cause to arrest him because Hassel told Officer Stacker that he had purchased the bag of marijuana earlier that day (as opposed to from McDade). However, law enforcement agents are not required to believe a suspect's assertion as to where he obtained his drugs. *Cf. Spiegel v. Cortese,* 196 F.3d 717, 724 (7th Cir. 2000) ("Many putative defendants protest their innocence, and it is not the responsibility of law enforcement officials to test such claims once probable cause has been established.") Nor does that fact negate the existence of probable cause where the officers observed what they believed to be an exchange of a bag of marijuana between McDade and Hassel, in a high drug traffic area, following a tip of a drug transaction.

Finally, McDade claims that even if there were probable cause to arrest him for the 2.2 grams of marijuana Hassel dropped, the officers lacked probable cause to arrest him for the 260–plus grams of marijuana which, according to McDade, was recovered from the Lewis house. The defendants admit that there is a factual dispute concerning the 260–plus grams of marijuana, and whether there was probable cause to arrest McDade for that marijuana. However, as the defendants point out, because there was probable cause to arrest McDade for the 2.2 grams of marijuana dropped by Hassel, whether there was also probable cause to arrest him for the additional grams recovered is immaterial because, either way, he still would have been arrested. Accordingly, the district court properly granted the defendants summary judgment on McDade's Fourth Amendment claim.

### B. False Imprisonment

McDade also claims that the defendants committed the tort of false imprisonment. This tort requires the plaintiff to prove that the defendants arrested or restrained the plaintiff without having reasonable grounds to believe that the plaintiff committed an offense. *Meerbrey v. Marshall Field & Co., Inc.,* 139 Ill.2d 455, 151 Ill.

Dec. 560, 564 N.E.2d 1222, 1231 (Ill.1990). For the same reason that McDade's Fourth Amendment claim fails, his false imprisonment claim fails as well; namely, the defendants had probable cause to believe that McDade had sold the marijuana to Hassel. Once again, the record is unclear on the other marijuana recovered, but since the officers had cause to detain him for the first offense, whether they also had probable cause to arrest him based on the marijuana allegedly found in the house is irrelevant.

### C. Assault and Battery Claims

■ McDade next claims that Officer Stacker committed the torts of assault and battery. (He does not present this as a constitutional claim.) On appeal, to support this claim, McDade asserts that "[i]n this case, Officer Stacker struck Appellant on several occasions." Appellant Brief at 24. However, in support of this assertion, McDade cites solely to this testimony from Dwight Gamble:

Q. Okay. Who said Gremar was roughed up?

A. I didn't see it. I just heard people talking about it.

Q. I understand. Who told you?

A. No one told me. I just heard them talking out loud, why they doing him like this.

Gamble's statements lack a proper foundation and constitute inadmissible hearsay, and therefore cannot support McDade's assault and battery claim. Because McDade does not point to any other testimony (not even his own) to support his assault and battery claim, the district court properly granted the defendants summary judgment on these claims.

### D. Malicious Prosecution

■ McDade's next claim is for malicious prosecution. Under Illinois law, a plaintiff must allege that he was subjected to judicial proceedings for which there was no probable cause and that the defendants instituted those proceedings maliciously and that the proceedings were terminated in the plaintiff's favor. The plaintiff must also establish an injury. *Curtis v. Bembenek*, 48 F.3d 281, 286 (7th Cir.1995). Additionally, to maintain a malicious prosecution suit against the arresting officers, McDade must allege more than a lack of probable cause; "rather, he must allege that the officers committed some improper act after they arrested him without probable cause, for example, that they pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence." *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 901 (7th Cir.2001); *see also, Reed v. City of Chicago*, 77 F.3d 1049, 1053–54 (7th Cir.1996).

In this case, McDade was prosecuted for two offenses: the possession with intent to deliver the less than 2.5 grams of marijuana recovered from Hassel, and possession of the more than 260 grams of marijuana allegedly recovered from inside the house. As to the first offense, there was clearly probable cause, as discussed above, and therefore McDade's malicious prosecution claim as to that charge fails. As to the second charge, as noted above, the record is unclear as to the existence of probable cause. However, because McDade's suit is against the arresting officers, he must establish more than a lack of probable cause. *Snodderly*, 239 F.3d at 901. McDade must present evidence that the officers committed some further improper act. McDade, however, fails to point to any evidence in the record that the officers influenced the prosecutors to prosecute McDade on this

second count. And although McDade conclusorily claims in his brief that "Officer Stacker filed a false criminal complaint against Appellant and testified falsely against Appellant at the preliminary hearing and trial," he fails to detail the allegedly false testimony, instead merely citing to nearly 60 pages of the record, without explanation. Federal Rule of Civil Procedure 56(e) requires McDade to point to "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Moreover, "[a]n appellant's brief must 'contain appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'" *Dye v. United States,* 360 F.3d 744, 748 (7th Cir.2004) (quoting Fed. R.App. P. 28(a)(9)(A)). McDade failed to do so, and therefore, the district court properly granted the defendants summary judgment on his malicious prosecution claim as well.

### E. *Intentional Infliction of Emotional Distress*

Finally, McDade claims that the defendants committed the tort of intentional infliction of emotional distress. The elements of this tort are: extreme and outrageous conduct; intent by the defendant to cause, or reckless disregard of the probability of causing, emotional distress; severe or extreme distress suffered by the plaintiff; and actual and proximate causation. *Debolt v. Mutual of Omaha,* 56 Ill. App.3d 111, 13 Ill.Dec. 656, 371 N.E.2d 373, 375 (Ill.1978).

In this case, McDade claims that he suffered severe distress as a result of the defendants' actions. To the extent McDade's claim is based on his arrest for the marijuana recovered from Hassel, that claim fails because his arrest was supported by probable cause. And to the extent his claim is premised on the second charge related to the 260-plus grams of marijuana, allegedly recovered from inside

the house, even if probable cause did not support that arrest, without any evidence that the officers pressured or influenced the prosecutors to prosecute McDade for that felony, they cannot be said to have caused the emotional distress McDade allegedly suffered during the ten months he remained in jail pending trial.

### III.

Although McDade was acquitted of the state charges, Officers Stacker and Johnson had probable cause to arrest him based on the circumstances of this case. Therefore, the district court properly granted the defendants summary judgment on McDade's Fourth Amendment claim. The district court also properly granted the defendants summary judgment on McDade's state law claims because McDade failed to present sufficient evidence to support an assault and battery claim, or a claim for malicious prosecution, false imprisonment, or intentional infliction of emotional distress. For these and the forgoing reasons, we AFFIRM.